IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GEORGE WAYNE BRADLEY,                    Case No. 6:14-cv-01489-AA
                                              OPINION AND ORDER
              Plaintiff,

        v.

CAROLYN W. COLVIN,
Commissioner of Social
Security,

              Defendant.
_____

Lisa R.J. Porter
JP Law, PC
5200 SW Meadows Rd., Suite 150
Lake Oswego, Oregon 97035
      Attorney for plaintiff

Billy J. Williams
Ronald K. Silver
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Sarah Moum
Social Security Administration
Office of General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
      Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff George Wayne Bradley brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II disability insurance benefits and Title XVI Supplemental Security Income disability benefits. For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

## PROCEDURAL BACKGROUND

On October 18, 2010, plaintiff applied for disability benefits, alleging disability beginning August 30, 2006.[1] Tr. 157–58, 116–17. His applications were denied initially and upon reconsideration. Tr. 124, 139, 154, 165. On August 2, 2012, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified. A lay witness and vocational expert ("VE") also testified. Tr. 69–115. On December 28, 2012, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 52–63. After the Appeals Council denied his request for review, plaintiff filed a

---

[1] There is a discrepancy in the record regarding the date of disability, as plaintiff's attorney stated in the hearing "[plaintiff's] real date of disability was [October 18, 2010], according to his own decision." Tr. 75. Because this Court affirms the ALJ's finding plaintiff was not disabled during the entire alleged period, it is not necessary to resolve the discrepancy.

Page 2 - OPINION AND ORDER

complaint in this Court.[2] Tr. 1-4.

## STATEMENT OF FACTS

Born January 24, 1974, plaintiff was 32 years old on the alleged onset date of disability and 38 years old at the time of the hearing. Tr. 75. Plaintiff dropped out of school during the ninth grade. Tr. 77-78. He worked previously as a "service station attendant, lube servicer, industrial truck operator, warehouse worker, car washer, and laundry worker." Tr. 61, 78-83. Plaintiff alleges disability as of August 30, 2006, due to congestive heart failure. Tr. 116. Further, plaintiff alleges problems with his right hand beginning in 2010. Tr. 84. Plaintiff asserts he suffers from drowsiness, fatigue, headaches, back pain, weakness in his knees, and swelling and numbness in his right hand. Tr. 59.

## STANDARD OF REVIEW

This Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v.

---

[2] The record before the Court contains multiple incidences of duplication. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears.

Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1502. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude

Page 4 - OPINION AND ORDER

substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national and local economy. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff "ha[d] not engaged in substantial gainful activity since August 30, 2006, the alleged onset date." Tr. 57. At step two, the ALJ determined plaintiff's "cardiomyopathy, hypertension, congestive heart failure, obstructive sleep apnea, obesity, degenerative disc disease, and right carpal tunnel syndrome" were severe and resulted in significant work-related functional limitations. <u>Id.</u> At step three, the ALJ found plaintiff's impairments, singly and in combination, did not meet or equal the requirements of a listed impairment. Tr. 58.

The ALJ then evaluated how plaintiff's impairments affected

his ability to work. The ALJ resolved plaintiff possessed the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 [C.F.R. §] 404.1567(a) and [20 C.F.R. §] 416.967(a) except he is limited to occasional climbing of ramps and stairs and he can do no climbing of ladders, ropes or scaffolds. He is limited to occasional balancing, stooping, kneeling, crouching and crawling. He is limited to frequent handling and fingering with the right dominant upper extremity. He should avoid exposure to hazards such as unprotected heights and dangerous machinery. He requires a sit/stand option at will.

Id.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 61. At step five, based on the VE's testimony and considering the plaintiff's age, work experience, and RFC, the ALJ found plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 62-63. Accordingly, the ALJ concluded plaintiff was not disabled under the Act. Tr. 63.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) finding him not fully credible; (2) improperly evaluating the lay witness statements; (3) conducting an improper step-three listing analysis; (4) not developing the record; and (5) improperly crafting the RFC and hypothetical to the VE.

I.    Credibility

Plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting his testimony concerning the pain and functioning limitations caused by his symptoms. When a claimant's medically documented impairments could reasonably be

Page 6 - OPINION AND ORDER

expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted). The ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. Batson v. Comm'r, 359 F.3d 1190, 1197 (9th Cir. 2004).

At the hearing, plaintiff testified he has issues with fatigue and drowsiness, which prevent him from working. Tr. 82. Plaintiff also testified he is unable to exert himself physically due to heart problems. Tr. 83-84. Plaintiff allegedly suffers from frequent headaches and back pain, and testified he has issues with his right hand as a result of an emergency IV placed in between his knuckles in 2010. Tr. 83-85.

After summarizing the hearing testimony, the ALJ determined plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but found plaintiff's "statements concerning the intensity, persistence and limited effects of these symptoms were not fully credible." Tr. 60. Specifically, the ALJ first noted plaintiff's inconsistency in his reports to providers regarding alcohol use. Id. In August 2011, plaintiff reported to his treating provider he had stopped consuming alcohol for about a year, but the provider noted he "forgot" about a police hold that had occurred a few weeks prior due to a drinking binge. Tr. 788. An ALJ may properly discount a plaintiff's testimony based on lack of truthfulness about substance use. Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999).

The ALJ also noted plaintiff's physician declined to prescribe potentially addictive medications in response to plaintiff's continual visits requesting pain medications. Tr. 61; see also Tr. 949 ("[I d]o not believe [plaintiff] is a candidate for any long term potentially addictive medications given his fairly recent past addiction history and continual visits requesting pain medications."). An ALJ may conclude a plaintiff's drug-seeking behavior was evidence of a tendency to exaggerate pain. See Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (likelihood claimant was exaggerating complaints of physical pain to "feed his Valium addiction" supported the ALJ's decision to reject his testimony).

The ALJ also found the plaintiff's testimony was undermined by his physical therapist. Tr. 60. Plaintiff argues the ALJ distorts the record and the physical therapist merely found physical therapy was not the correct treatment, without doubting the severity of plaintiff's pain. The ALJ noted, however, plaintiff responded inconsistently to certain tests during physical therapy. Tr. 60; see also Tr. 886 (physical therapist concluding plaintiff's pain "might not have an entirely physical cause"). While plaintiff offers a plausible alternative interpretation of the record, the ALJ's reading was rational and is therefore upheld. Burch, 400 F.3d at 679.

The ALJ further determined plaintiff's complaints of frequent headaches were not supported by the record. Tr. 60. As the ALJ noted, only one headache is documented in the medical records. Tr. 743. Although absence of medical corroboration alone is insufficient to negate credibility, when combined with other negative credibility factors as discussed above, this lack of corroborating medical evidence supports the ALJ's credibility finding. See Thomas, 278 F.3d at 959 (absence of supporting medical evidence was among specific, clear and convincing reasons to discount plaintiff's testimony).

Lastly, the ALJ discounted plaintiff's testimony as inconsistent with his activities of daily living, because "[t]reatment records reflect an active lifestyle despite his symptoms." Tr. 60. Daily activities may be used to discredit a claimant where they "contradict claims of a totally debilitating

Page 9 - OPINION AND ORDER

impairment." Molina v. Astrue, 674 F.3d 1104, 1112-13 (9th Cir.

2012) (citations omitted). As the ALJ noted, plaintiff exercises 5

to 10 hours per week, and can be active for 5 hours before resting.

Tr. 60; see also Tr. 304, 633. Plaintiff also reports he can still

work on cars despite it being difficult. Tr. 888. It was rational

for the ALJ to conclude plaintiff's daily activities suggest a

capacity for sedentary work.

Because the ALJ provided clear and convincing reasons for

rejecting plaintiff's subjective symptom statements, the ALJ's

credibility finding is affirmed.

## II. Lay Witness Testimony

Plaintiff also argues the ALJ improperly discredited the

written statement from plaintiff's mother and testimony from

plaintiff's brother. Generally, lay witness testimony describing

a plaintiff's symptoms is "competent evidence that the ALJ must

take into account." Molina v. Astrue, 647 F.3d 1104, 1114 (9th Cir.

2012). "[I]n order to discount competent lay witness testimony, the

ALJ 'must give reasons that are germane to each witness.'" Id.

(citing Dodrill, 12 F.3d at 919).

Plaintiff's mother completed a third-party questionnaire on

December 15, 2010.[3] Tr. 280-87. She reported plaintiff cannot sit

_____

[3] Plaintiff's mother also completed a second witness
statement. The questions on that statement are answered in the
first person, however, and the handwriting notably changes
throughout the document. See Tr. 305-12. While plaintiff's mother
indicated she completed the form, defendant is correct the report
appears to have been completed under plaintiff's direction.
Therefore, it was proper for the ALJ not to address the report as
a witness statement.

Page 10 - OPINION AND ORDER

or stand for long periods, cannot walk more than short distances, and has problems bending and kneeling. Tr. 280, 285. She also reported plaintiff does laundry, wipes counters, and does light dusting around the house. Tr. 282. The ALJ determined plaintiff's mother's "allegations . . . concerning [plaintiff's] activities are generally credible," but concluded the documented activities were consistent with a capacity for sedentary work. Tr. 61.

Plaintiff's brother testified at the hearing. Tr. 93-100. He stated plaintiff is regularly exhausted after walking short distances, frequently loses balance and falls due to back pain, and constantly complains about headaches. Tr. 96-97. He also stated plaintiff is quite limited in his daily activities and cannot tie his shoes with his right hand, cannot vacuum because of his right hand and back, and cannot carry the laundry. Tr. 97-99. The ALJ determined plaintiff's brother's testimony was not entirely credible. Tr. 61. The ALJ found the "[t]reatment records do not document any loss of balance, falls or frequent headaches." Id. Further, the ALJ relied on plaintiff's report stating he is able to do some work on cars despite manipulative limitations. See Tr. 888.

The ALJ properly discredited plaintiff's brother's testimony. By referring to inconsistencies between aspects of his testimony and specific instances in the record, such as plaintiff's own reports and an absence of corroborating evidence, the ALJ provided germane reasons for her rejection. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). The ALJ's credibility findings regarding the lay witness testimony are affirmed.

III. <u>Step Three Analysis</u>

Plaintiff next argues the ALJ erred at step three by finding his impairment did not meet the criteria for certain musculoskeletal listings. For an impairment to match a listing, a plaintiff must show the impairment meets all of the specified medical criteria. <u>Sullivan v. Żebley</u>, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Id.</u>

Plaintiff relies on his carpal tunnel syndrome in his right hand to argue that he meets listings 1.02 and 11.14; however, both listings require impairment in <u>both</u> upper extremities. <u>See</u> 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.02B (requiring "[i]nvolvement of one major peripheral joint in <u>each</u> upper extremity") (emphasis added); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 11.14, 11.04B (requiring "[s]ignificant and persistent disorganization of motor function in <u>two</u> extremities") (emphasis added). The ALJ found the evidence indicated limitations in only one upper extremity, plaintiff's right arm. Tr. 59. Therefore, it was proper for the ALJ to determine the plaintiff's impairments do not meet the criteria for any musculoskeletal listing. The ALJ's step three analysis is affirmed.

IV. <u>Developing the Record</u>

Plaintiff further argues the ALJ failed to fully develop the record regarding the possibility of a medically determinable impairment. An ALJ has a special "duty to fully and fairly develop the record and to assure that the claimant's interests are

Page 12 - OPINION AND ORDER

considered." <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983).
An ALJ's duty to develop the record, however, is "triggered only
when there is ambiguous evidence or when the record is inadequate
to allow for proper evaluation of the evidence." <u>Mayes v.
Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

Plaintiff points to a consultative examination that reported
plaintiff having poor vision, and a note by plaintiff's medical
provider indicating corneal deposits. Tr. 447, 714. Neither
these documents triggered the ALJ's duty to develop the record.
While plaintiff's medical provider recognized that the corneal
deposits are a secondary result of certain medication, the provider
did not discuss any specific vision issues stemming from those
deposits. Tr. 714. Further, the consultative examination indicates
plaintiff's poor vision is correctable with eye wear. Tr. 447.
Impairments that can be controlled effectively with treatment are
not disabling. <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001,
1006 (9th Cir. 2006).

V. <u>RFC Assessment and Step Five Analysis</u>

Finally, plaintiff argues the ALJ improperly crafted
plaintiff's RFC assessment and, as a result, erred at step five.
Plaintiff contends the ALJ did not discuss an opinion by Erik
Blake, M.D., in plaintiff's RFC, and this constituted harmful
error. <u>See</u> Tr. 694-701 (Dr. Blake's opinion). Accordingly,
plaintiff argues the ALJ's hypothetical questions to the VE did not
set out all of plaintiff's limitations and restrictions as
required.

Page 13 - OPINION AND ORDER

Among other limitations, the ALJ found plaintiff was "limited to frequent handling and fingering with the right dominant upper extremity." Tr. 58. In reaching this conclusion, the ALJ noted Dr. Blake's opinion:

> [D]ue to carpal tunnel syndrome, [plaintiff] would need to work at a reduced pace. Symptoms would frequently interfere with attention and concentration. [Plaintiff] had limitations in reaching, handling, fingering, feeling, pushing and pulling with the right upper extremity. He could occasionally lift 10 pounds and frequently lift less than 10 pounds. He could perform at least sedentary duty work.

Tr. 60. While the ALJ gave some weight to Dr. Blake's opinion "concerning the [plaintiff's] manipulative and lifting limitations," the ALJ found that Dr. Blake did "not specify the degree of manipulative limitations." Id.

As a threshold matter, plaintiff asserts Dr. Blake opined plaintiff could not use his right upper extremity while performing sedentary jobs. I disagree with plaintiff's interpretation of Dr. Blake's opinion. Dr. Blake stated "[plaintiff] could perform at least sedentary duty work [with] regards only to his right [carpal tunnel syndrome]." Tr. 701 (emphasis in original). This statement indicates that carpal tunnel syndrome in plaintiff's right arm and hand limits him to sedentary work; it does not suggest plaintiff is unable to use his right arm.

Further, Dr. Blake's opinion was properly determined credible but not specific, as it did not indicate the degree to which the physical function of "[f]ingering (fine manipulation)" would be affected. Tr. 699. The only available evidence regarding the extent of this limitation was plaintiff's own testimony. As discussed in

Page 14 - OPINION AND ORDER

Part I, the ALJ properly found plaintiff's testimony not fully credible. The ALJ's conclusion plaintiff could perform sedentary jobs requiring frequent handling and fingering so long as he worked at a reduced pace is a reasonable interpretation of Dr. Blake's opinion. The ALJ's RFC assessment and step five analysis are affirmed. Substantial evidence supports the ALJ's determination plaintiff is not disabled.

**CONCLUSION**

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 27 day of November 2015.


_____
Ann Aiken
United States District Judge